In re the Marriage of:

Michael J. LANDWEHR,
Petitioner-Appellant-Petitioner,

v.

Bernadette N. LANDWEHR,
Respondent-Respondent.

Supreme Court

*No. 2003AP2555. Oral argument December 13, 2005.
—Decided June 6, 2006.*

2006 WI 64

(Also reported in 715 N.W.2d 180.)

For the petitioner-appellant-petitioner there were briefs by *Rex R. Anderegg* and *Anderegg & Mutschler, LLP,* Milwaukee, and oral argument by *Rex R. Anderegg.*

For the respondent-respondent there was a brief by *Bruce C. O'Neill, Diane Slomowitz,* and *Fox, O'Neill & Shannon, S.C.,* Milwaukee, and oral argument by *Bruce C. O'Neill.*

¶ 1. LOUIS B. BUTLER, JR., J. Michael Landwehr seeks review of an unpublished decision by the court of appeals affirming a decision of the Milwaukee County Circuit Court, the Honorable William Sosnay, that modified the physical placement schedule of his two children. The circuit court granted the modification for summer placement, but denied Michael's motion to modify physical placement during the school year. The court of appeals affirmed the circuit court's placement decision. *Landwehr v. Landwehr,* No. 2003AP2555, unpublished slip op. (Wis. Ct. App. January 27, 2005).[1]

¶ 2. Michael Landwehr asks this court to find that under the particular facts of this case, the maximization language in Wis. Stat. § 767.24(4)(a)2. (2003–04)[2] man-

---

[1] Along with appealing the circuit court's order modifying his placement, Michael also appealed the court's order denying his motion for a reduction in child support payments. *Landwehr v. Landwehr,* No. 2003AP2555, unpublished slip op., ¶ 1, (Wis. Ct. App. January 27, 2005). The child support payments are not before this court.

[2] All references to the Wisconsin Statutes are from 2003–04 unless otherwise noted.

dates equal placement, and therefore requires reversal of the circuit court's placement decision for the school year. We disagree.

¶ 3. We conclude that Wis. Stat. § 767.24(4)(a)2. does not require a court to grant each parent equal placement if the court determines that the placement should be modified. We conclude, therefore, that in making modification determinations, the Wisconsin Statutes direct the circuit court to maximize the amount of time a child spends with his or her parents within an overall placement schedule, taking into account the best interests of the child, the presumption of the status quo under Wis. Stat. § 767.325(1) and (2), the general factors listed in Wis. Stat. § 767.24, and the particular factors listed under § 767.24(5)(am) when relevant to the child. Finally, because we determine that the circuit court properly exercised its discretion in retaining the existing school year placement and increasing the children's placement with Michael during the summer months, we affirm the court of appeals.

I

¶ 4. The relevant facts are as follows. Michael and Bernadette were divorced on June 20, 2000. They had two children, born in May 1993 and January 1997. The children's placement schedule, established in the Marital Settlement Agreement, was based on the particular schedules of Michael and Bernadette at the time of their divorce.[3] Under the Marital Settlement Agreement, Michael and Bernadette agreed that the children's

---

[3] When the children's placement was finalized, Michael was working at Menasha Corporation at least 45 hours per week. Michael was also required to travel for his job. Bernadette worked 16 hours per week as a registered nurse at Froedert Hospital.

primary placement would be with Bernadette, with Michael having placement on Wednesday evenings, Thursday overnights, and every other weekend.

¶ 5. Shortly after the divorce, Michael stopped working at his then-existing place of employment, the Menasha Corporation, and started his own business, PackX, which became a competitor of Menasha Corporation. Michael's self-employment allowed him to work more flexible hours. Michael also moved within a few minutes of his children's school and the home where his children lived with Bernadette.

¶ 6. On June 24, 2002, Michael petitioned the court to reduce his child support payments[4] and to modify the physical placement schedule. Michael sought equal placement of his children based on his reduced hours and the fact that he moved closer to the children and their school. The Family Court Commissioner certified the placement issue to the trial court on September 25, 2002. The circuit court heard testimony regarding the children's placement on February 24, 2003, and July 2, 2003. On July 11, 2003, the circuit court increased Michael's placement by ten nights in the summer, but kept the same placement schedule for the school year.[5] Michael appealed the trial court's

---

[4] In the Marital Settlement Agreement, Michael and Bernadette also agreed that Michael's child support payments for his children would be either $1,800 or 25 percent of Michael's gross income, whichever was greater. The circuit court denied Michael's request to reduce his child support obligation. *Landwehr*, slip op., ¶ 11. The court of appeals reversed the trial court's child support decision and remanded for redetermination of the issue. *Id.*, ¶ 1. Michael did not ask this court to review the child support issue, and it is therefore not relevant to our review.

[5] On August 21, 2003, the circuit court entered a written order memorializing its decision.

order. The court of appeals affirmed the placement decision, concluding that Wis. Stat. § 767.24(4)(a)2. does not require, nor presume, equal placement. This court accepted review.

II

█

¶ 7. This case presents questions regarding the application of the Wisconsin Statutes to a parent's request for modification of the children's placement schedule. We give deference to the circuit court's decisions regarding the modification of placement under an erroneous exercise of discretion standard of review, *Andrew J. N. v. Wendy L. D.,* 174 Wis. 2d 745, 764, 498 N.W.2d 235 (1993),[6] and affirm the circuit court's decisions when the court applies the correct legal standard and reaches a reasonable result. *Id.* at 766; *Hughes v. Hughes,* 223 Wis. 2d 111, 119–20, 588 N.W.2d 346 (Ct. App. 1998).

---

[6] In *Hamachek v. Hamachek,* 270 Wis. 194, 70 N.W.2d 595 (1955), this court announced that appellate courts should review circuit courts' child custody modification decisions under an erroneous exercise of discretion standard of review.

> [T]he matter of the custody of children in divorce actions is a matter peculiarly within the jurisdiction of the trial court, who has seen the parties, had an opportunity to observe their conduct, and is in much better position to determine where the best interests of the child lie than is an appellate court.

*Id.* at 202 (quoting *Adams v. Adams,* 178 Wis. 522, 525, 190 N.W. 359 (1922)).

Subsequent to this court's decision in *Hamachek,* the Wisconsin Legislature significantly amended the statutes governing modification decisions. In *Andrew J. N.,* this court examined whether the erroneous exercise of discretion remained the proper standard of review even though the statutes had been significantly revised. This court concluded that the rationale

¶ 8. Whether the circuit court has applied the correct legal standard is a question of law reviewed de novo. *J.A.L. v. State,* 162 Wis. 2d 940, 962, 471 N.W.2d 493 (1991) (citation omitted). *See also Kenyon v. Kenyon,* 2004 WI 147, ¶ 11, 277 Wis. 2d 47, 690 N.W.2d 251; *State v. Stenklyft,* 2005 WI 71, ¶ 7, 281 Wis. 2d 484, 697 N.W.2d 769 (citation omitted).

¶ 9. This case presents a question of statutory interpretation, which we review de novo. *State v. Reed,* 2005 WI 53, ¶ 13, 280 Wis. 2d 68, 695 N.W.2d 315. The purpose of statutory interpretation is to give the statute its full, proper, and intended effect. *Id.* (citations omitted). We begin with the statute's language because it is assumed that the legislature's intent is expressed in the words it used. *State ex rel. Kalal v. Dane County Circuit Court,* 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. We refrain from interpreting statutory language in isolation and interpret the language in the context in which it is used in order to avoid absurd or unreasonable results. *Id.,* ¶ 46. In addition, when the plain

from *Hamachek* applied to modification decisions under Wis. Stat. § 767.325(1)(a) by the circuit court even though the law had been amended.

> We conclude that the decision to modify custody and placement under sec. 767.325(1)(a), Stats., is within the trial court's discretion. It will not be disturbed unless the trial court erroneously exercises that discretion.

*Andrew J. N. v. Wendy L. D.,* 174 Wis. 2d 745, 764, 498 N.W.2d 235 (1993).

We similarly conclude that the erroneous exercise of discretion is the proper standard of review for a circuit court's modification decision under Wis. Stat. § 767.325(1)(b).

wording of a statute unambiguously evinces the legislative intent, this court may examine the legislative history to support our reading of the plain meaning of the statute. *Wis. Citizens Concerned for Cranes & Doves v. DNR,* 2004 WI 40, ¶ 8, 270 Wis. 2d 318, 677 N.W.2d 612 (citations omitted).

## III

¶ 10. This case compels us to clarify the statutory requirements imposed upon a circuit court in modifying a custody placement order. Michael Landwehr asks this court to find that when both parents are available, willing, and able to accommodate equal placement, and when the parents are located near each other, Wis. Stat. § 767.24(4)(a)2. mandates equal placement because a child's time with his or her parents cannot otherwise be "maximized."

¶ 11. Although this court has not previously examined the meaning of Wis. Stat. § 767.24(4)(a)2., various published court of appeals decisions have concluded that this statute does not require equal placement. *Keller v. Keller,* 2002 WI App 161, ¶ 12, 256 Wis. 2d 401, 647 N.W.2d 426; *Lofthus v. Lofthus,* 2004 WI App 65, ¶ 14, 270 Wis. 2d 515, 678 N.W.2d 393; *Arnold v. Arnold,* 2004 WI App 62, ¶ 11, 270 Wis. 2d 705, 679 N.W.2d 296. We agree with these conclusions. Our analysis of the plain meaning of Wis. Stat. §§ 767.325 and 767.24(4)(a)2., supported by the statute's legislative history, reveals that the legislature did not intend the term "maximizing" to mean equal placement or equal time.

## A

¶ 12. This case involves a parent's request to substantially modify an existing placement order that

58

has been in effect for at least two years. Prior to substantially modifying any such placement order, the moving party must show that there has been "a substantial change of circumstances since the entry of the last order affecting legal custody or the last order substantially affecting physical placement," and the circuit court must take into account whether the current or future custodial conditions and physical placement are in the child's best interest. Wis. Stat. § 767.325(1)(b)1.a and b.[7] *See also Greene v. Hahn,*

[7] The statute reads:

1. Except as provided under par. (a) and sub. (2), upon petition, motion or order to show cause by a party, a court may modify an order of legal custody or an order of physical placement where the modification would substantially alter the time a parent may spend with his or her child if the court finds all of the following:

 a. The modification is in the best interest of the child.

 b. There has been a substantial change of circumstances since the entry of the last order affecting legal custody or the last order substantially affecting physical placement.

2. With respect to subd. 1., there is a rebuttable presumption that:

 a. Continuing the current allocation of decision making under a legal custody order is in the best interest of the child.

 b. Continuing the child's physical placement with the parent with whom the child resides for the greater period of time is in the best interest of the child.

3. A change in the economic circumstances or marital status of either party is not sufficient to meet the standards for modification under subd. 1.

Wis. Stat. § 767.325(1)(b).

If the modifications sought are within two years of the initial order entered under Wis. Stat. § 767.24, the party seeking modification must file a motion that shows by substantial evidence that the modification of custody or placement is

2004 WI App 214, ¶ 22, 277 Wis. 2d 473, 689 N.W.2d 657. In this analysis there exists a rebuttable presumption that the status quo is in the best interest of the child. Wis. Stat. § 767.325(1)(b)2. When the initial order granted greater placement with one parent as compared to the other—as the circuit court ordered in this case—continuing the current allocation of decision-making authority under a legal custody order and continuing the child's physical placement with the parent with whom the child resides for the greater period of time is therefore presumed to be in the best interest of the child. *Id.*;[8] *Greene,* 277 Wis. 2d 473, ¶ 22.

necessary because the current conditions are physically or emotionally harmful to the best interest of the child. The statute states:

> (a) Within 2 years after initial order. Except as provided under sub. (2), a court may not modify any of the following orders before 2 years after the initial order is entered under s. 767.24, unless a party seeking the modification, upon petition, motion, or order to show cause shows by substantial evidence that the modification is necessary because the current custodial conditions are physically or emotionally harmful to the best interest of the child:

1. An order of legal custody.

2. An order of physical placement if the modification would substantially alter the time a parent may spend with his or her child.

Wis. Stat. § 767.325(1)(a). This statute is inapplicable to the present case.

[8] The statute reads:

> Continuing the child's physical placement with the parent with whom the child resides for the greater period of time is in the best interest of the child.

Wis. Stat. § 767.325(1)(b)2.b.

¶ 13. If the circuit court determines that a change in placement may be appropriate, Wis. Stat. § 767.325(5m) further directs the circuit court to "make its [modification] determination in a manner consistent with s. 767.24," specifically taking into account the 16 factors considered during the court's initial placement determination.[9]

---

[9] Wisconsin Stat. § 767.24(5) establishes the 16 factors that the circuit court must consider in determining physical placement. The 16 factors include:

> 1. The wishes of the child's parent or parents, as shown by any stipulation between the parties, any proposed parenting plan or any legal custody or physical placement proposal submitted to the court at trial.
>
> 2. The wishes of the child, which may be communicated by the child or through the child's guardian ad litem or other appropriate professional.
>
> 3. The interaction and interrelationship of the child with his or her parent or parents, siblings, and any other person who may significantly affect the child's best interest.
>
> 4. The amount and quality of time that each parent has spent with the child in the past, any necessary changes to the parents' custodial roles and any reasonable lifestyle changes that a parent proposes to make to be able to spend time with the child in the future.
>
> 5. The child's adjustment to the home, school, religion and community.
>
> 6. The age of the child and the child's developmental and educational needs at different ages.
>
> 7. Whether the mental or physical health of a party, minor child, or other person living in a proposed custodial household negatively affects the child's intellectual, physical, or emotional wellbeing.
>
> 8. The need for regularly occurring and meaningful periods of physical placement to provide predictability and stability for the child.
>
> 9. The availability of public or private child care services.

61

## Wis. Stat. § 767.325(5m).[10]

10. The cooperation and communication between the parties and whether either party unreasonably refuses to cooperate or communicate with the other party.

11. Whether each party can support the other party's relationship with the child, including encouraging and facilitating frequent and continuing contact with the child, or whether one party is likely to unreasonably interfere with the child's continuing relationship with the other party.

12. Whether there is evidence that a party engaged in abuse, as defined in s. 813.122(1)(a), of the child, as defined in s. 48.02(2).

13. Whether there is evidence of interspousal battery as described under s. 940.19 or 940.20(1m)or domestic abuse as defined in s. 813.12(1)(am).

14. Whether either party has or had a significant problem with alcohol or drug abuse.

15. The reports of appropriate professionals if admitted into evidence.

16. Such other factors as the court may in each individual case determine to be relevant.

Wis. Stat. § 767.24(5)(am)(1) to (16).

In addition, Wis. Stat. § 767.24(5)(bm) addresses cases of spousal abuse, battery, or domestic violence, stating that when such circumstances are present, "the safety and wellbeing of the child and the safety of the parent who was the victim of the battery or abuse shall be the paramount concerns in determining legal custody and periods of physical placement." Such circumstances are not present in this case.

[10] The relevant statute states, in full:

In all actions to modify legal custody or physical placement orders, the court shall consider the factors under s. 767.24(5)(am), subject to s. 767.24(5)(bm), and shall make its determination in a manner consistent with s. 767.24.

Wis. Stat. § 767.325(5m).

B

¶ 14. Michael asserts that due to the particular facts and circumstances of his situation—because he now lives a short distance from the children and the children's school and now has a flexible schedule that can accommodate more time with his children—the court should have granted him equal placement. Michael relies on Wis. Stat. § 767.325(5m), which, as stated above, instructs the circuit court to "make its [modification] determination in a manner consistent with 767.24," and the fact that Wis. Stat. § 767.24(4)(a)2. instructs the courts to maximize the time spent with each parent within the placement schedule. Section § 767.24(4)(a)2. states:

> In determining the allocation of periods of physical placement, the court shall consider each case on the basis of the factors in sub. (5)(am), subject to sub. (5)(bm). The court shall set a placement schedule that allows the child to have regularly occurring, meaningful periods of physical placement with each parent and that *maximizes the amount of time the child may spend with each parent,* taking into account geographic separation and accommodations for different households.

Wis. Stat. § 767.24(4)(a)2. (emphasis added).

¶ 15. We begin our review by examining the text of the statute. Wisconsin Stats. § 767.24(4)(a)2. contains no language regarding the notion of equal placement. Instead, the legislature used the phrase "maximizes the amount of time." The legislature failed to define what it means to maximize the amount of time a child spends with each parent.

¶ 16. When a statute does not define a term, we examine the ordinary meaning of that term, and rely on

63

dictionary definitions for undefined, non-technical terms. *Mared Industries, Inc. v. Mansfield,* 2005 WI 5, ¶ 32, 277 Wis. 2d 350, 690 N.W.2d 835 (quoting *State v. Polashek,* 2002 WI 74, ¶ 19, 253 Wis. 2d 527, 646 N.W.2d 330)). The pertinent dictionary definition of "maximize" is "[t]o increase or make as great as possible," and "[t]o find the highest value of." *American Heritage Dictionary* 1112 (3d ed. 1992). Thus, the legislature has instructed the court to make the amount of time a child spends with each parent as great as possible. In order to determine the proper meaning of this language, we consider the term in the context of the entire subsection in which it is used, Wis. Stat. § 767.24(4)(a)2., and in the context of chapter 767 in its entirety. *See Kalal,* 271 Wis. 2d 633, ¶ 46.

¶ 17. The term "maximizing" is found in the second sentence of subsection 767.24(4)(a)2. The first sentence of the subsection directs that, "[i]n determining the allocation of periods of physical placement, the court shall consider each case on the basis of the factors in sub. (5)(am), subject to sub. (5)(bm)." The circuit court is then instructed to set meaningful periods of physical placement that maximize each parent's time with the children, also taking into account geography and accommodations.

¶ 18. We conclude that the concept of "maximizing" does not supersede the specific considerations explicitly required under this subsection. Although the statute establishes a general directive for a circuit court to make modification determinations consistent with Wis. Stat. § 767.24, which includes *"maximiz[ing] the amount of time the child may spend with each parent,"* this general directive does not trump the other considerations specifically required in the statute. The statute

specifically establishes a presumption of the status quo and specifically requires the court to examine the 16 factors enumerated in Wis. Stat. § 767.24(5). The specific directives involving the status quo presumption and the 16 considerations listed under § 767.24(5)(am) and (bm) clearly and unambiguously control the general directive to "make its determination in a manner consistent with s. 767.24." Wis. Stat. § 767.325(5m). *See Abbas v. Palmersheim,* 2004 WI App 126, ¶ 41, 275 Wis. 2d 311, 685 N.W.2d 546 (Lundsten, J., concurring).

¶ 19. As a result, the circuit court is required to set a placement schedule that establishes meaningful periods of physical placement and maximizes each parent's time with the child, in the context of the status quo presumption and the 16 factors enumerated in Wis. Stat. § 767.24(5) as applied to the particular facts and circumstances of the child.

¶ 20. Under this statutory scheme, the circuit court is required to take into account all the considerations in making an initial placement decision under Wis. Stat. § 767.24. This, of course, *includes* the notion of maximizing time with each parent under § 767.24(4)(a)2., but the court must attempt to maximize the children's time with each parent within the context of the various other considerations the court is instructed to contemplate under § 767.24. The term "maximize" does not supersede the trial court's discretion to construct a schedule it determines is in the best interest of the child and otherwise in conformity with the intricate dictates of § 767.24.

¶ 21. This court has previously recognized that "the legislature has clearly and repeatedly expressed the policy that courts are to act in the best interest of children." *Holtzman v. Knott,* 193 Wis. 2d 649, 682, 533 N.W.2d 419 (1995). Had the legislature intended to

create an equal placement presumption in modification determinations, over and above the other various considerations that the statutes instruct the court to contemplate, the legislature would have used specific and explicit language to accomplish this goal. *See, e.g., Eau Claire County v. General Teamsters Union Local No. 662,* 2000 WI 57, ¶ 17, 235 Wis. 2d 385, 611 N.W.2d 744. As we have stated in other contexts, "[s]uch a dramatic change in public policy should not have to be made by inference." *Id.* [11]

¶ 22. Moreover, the legislature itself has explicitly recognized that, with respect to the modification of legal custody and physical placement orders, the phrase "maximizes the amount of time" cannot be equated with the notion of "equal placement." Where the initial order has been in existence for more than two years, the legislature has created two separate rebuttable presumptions, both in favor of the status quo. One presumption applies to situations where a child is originally placed with each parent for substantially equal amounts of time. In these situations, there is a rebuttable presumption that maintaining substantially equal periods of physical placement is in the best interest of the child. Wis. Stat. § 767.325(2)(b). A different presumption applies to situations, like the current case, where the court's original order places a child with one

---

[11] Addressing arbitration, this court stated: "Given such strong statements of public policy favoring arbitration, it is difficult to conceive that the legislature would enact a statute directly in contravention of this state's announced public policy without using specific explicit language to do so. Such a dramatic change in public policy should not have to be made by inference." *Eau Claire County v. General Teamsters Union Local No. 662,* 2000 WI 57, ¶ 17, 235 Wis. 2d 385, 611 N.W.2d 744 (citation and quotation omitted).

parent for a greater period of time as compared to the other parent. When a party seeks to modify an initial placement order that gives one parent greater placement, there exists a rebuttable presumption that continuing the child's physical placement with the parent with whom the child resides for the greater period of time is in the best interest of the child. Wis. Stat. § 767.325(1)(b)2.b. The legislature's explicit creation of alternative presumptions that depend on where the child was initially placed is a legislative recognition that the phrase "maximizes the amount of time" does not mean equal placement is required in modification determinations.

¶ 23. We therefore conclude that interpreting the term "maximize" to mandate equal placement would be a distortion of the term as it is used within this statutory scheme. The proposed interpretation ignores the additional statutory directives and would allow the "maximizing" principle to trump the statutory emphasis on the child's best interest and other relevant considerations, rendering numerous provisions of the Wisconsin Statutes irrelevant and meaningless.

C

¶ 24. The legislative history further reinforces the plain language of the statute. Although we need not examine legislative history when we find a statute unambiguous, we occasionally consult the legislative history to demonstrate "how that history supports our interpretation of a statute otherwise clear on its face." *Megal Development Corp. v. Shadof,* 2005 WI 151, ¶ 22, 286 Wis. 2d 105, 705 N.W.2d 645 (citation omitted).

¶ 25. In 1999, the legislature made significant changes to Chapter 767. *See* 1999 Wis. Act 9 §§ 3051n-3065di. The original version of this Act changed Wis. Stat. § 767.24(5)(bm) to state that a child had the "right to spend the same or substantial periods of time with each parent." However, then-Governor Tommy Thompson vetoed this provision. Governor Thompson explained his rationale in a veto message that accompanied his veto. Because a governor's veto message is part of the legislative history and is evidence of legislative intent, *see Juneau County v. Courthouse Employees,* 221 Wis. 2d 630, 649, 585 N.W.2d 587 (1998), we examine his statement to further understand the legislative intent in enacting § 767.24(5)(bm). Governor Thompson stated in his veto message, in relevant part:

> Under current law, any placement schedule is evaluated against the standard of what is best for a child. Also under current law, a child is already entitled to periods of physical placement with both parents unless the court determines placement with a parent may be harmful to the child.

> *Another change introduced creates a goal for the court to award regularly occurring and meaningful periods of physical placement which maximizes the amount of time each parent may spend with a child. I feel this latter change is sufficient to encourage courts to award as much placement as possible to each parent in accordance with what is best for a child.* Creating a right of a child, however, goes too far and I object to the use of the budget bill to create new rights for children. If such a right exists, it should receive additional public and legislative review. Furthermore, by framing this issue in terms of a right, this section could arguably override the best interest standard. Therefore, I am vetoing section 3054cw and removing this right.

Governor's Veto Message, October 27, 1999, at 88 (emphasis added).

¶ 26. Moreover, the same year the legislature enacted the sweeping changes to Chapter 767, the legislators also rejected a bill that would have eliminated the best interest of the child standard and would have created an equal placement presumption in all cases. *See* 1999 Senate Bill 107.[12] The legislature rejected SB 107 and instead enacted 1999 Wis. Act 9 §§ 3051n-3065di.

¶ 27. In addition, 1999 Wis. Act 9 §§ 3051n-3065di also created Wis. Stat. § 767.24(2), which established a presumption of joint legal custody in the initial placement determination. The fact that the legislature established a presumption of joint legal custody but did not use similar terms in § 767.24(4)(a)2., and instead used the phrase "maximizes the amount of time," demonstrates the legislature did not intend the provisions to have the same meaning. *Responsible Use of Rural and Agric. Land (RURAL) v. Public Serv. Comm'n of Wis.*, 2000 WI 129, ¶ 39, 239 Wis. 2d 660, 619 N.W.2d 888 ("If a word or words are used in one subsection but are not used in another subsection, we must conclude that the legislature specifically intended a different meaning.") (citations omitted).

¶ 28. Further, when the legislature modified Chapter 767 in 1999, it chose to retain § 767.325(1)(b)2.b., which creates a presumption of the status quo in modification decisions when the original order granted one parent greater placement to continue the child's physical placement with the parent with whom the child

---

[12] Senate Bill 107 also eliminated the role of guardians ad litem in family court. That portion of the bill is not pertinent to this case.

resides for the greater period of time. Wis. Stat. § 767.325(1)(b)2.b. Had the legislature wanted to replace the status quo presumption with a presumption of equal placement in modification decisions, it would have done so explicitly by changing these provisions.

¶ 29. The legislative history clearly supports the plain language of the statute: the maximization language was intended neither to override the best interests standard, nor to create a presumption of equal physical placement when the original placement order granted one parent greater placement.

## D

¶ 30. Applying the plain meaning of the statutes to the present case, we conclude that the court did not abuse its discretion in modifying Michael's placement order.

¶ 31. We note that the circuit court's discretion is entitled to deference if it applies the correct legal standard and reaches a reasonable result. *See Hughes,* 223 Wis. 2d at 119–20. The circuit court determined that modification of the placement order was in the children's best interest and that the circumstances had substantially changed when Michael became self-employed and moved closer to his children. In addition, the trial court concluded that Michael successfully rebutted the presumption that the status quo was not in the children's best interest during the summer months, but that Michael failed to rebut the presumption that continuing the children's placement during the school year was in the children's best interest. In modifying the placement order, the circuit court also considered the factors relevant to the Landwehr

children's particular situation, such as the children's adjustment to their home and school, their existing placement order, their developmental needs, their need for stability, and the parents' relationship.

¶ 32. Upon consideration of the children's best interest and factors relevant to the Landwehrs' particular situation, the circuit court increased the children's placement with their father during the summer months, but found that modification of the existing placement schedule during the school year was not in the children's best interest. We find that the record reflects that the court applied the correct legal standard and reached a reasonable conclusion. We therefore affirm the circuit court's modification determinations.

IV

¶ 33. In addition to concluding that the circuit court did not abuse its discretion in modifying Michael's placement order in July 2003, we also acknowledge that in making its modification decision, the circuit court did not issue a written decision setting forth its reasons for the modification. Wisconsin Stats. § 767.325(5) requires a court to state in writing its reasons for a modification when the placement modification is contested. The relevant statute reads, in full:

> If either party opposes modification or termination of a legal custody or physical placement order under this section the court shall state, *in writing,* its reasons for the modification or termination.

Wis. Stat. § 767.325(5) (emphasis added).

¶ 34. Although the circuit court did not specifically delineate its reasons for the modification decision in a written decision, we find that under the circum-

stances of this case, the circuit court order substantially met the requirement of Wis. Stat. § 767.325(5) that the court's reasoning be in writing. First, the circuit court's written order incorporated by reference the court's "findings of facts and conclusions of law on the record on July 11, 2003." Second, upon review of the transcripts of the circuit court's decision on July 11, 2003, we find that the court substantially explained its reasons for the court's modification decision. Third, the court's rationale that is reflected in the record supports the circuit court's modification of Michael's placement schedule. We therefore conclude that the court's order was in substantial compliance with Wis. Stat. § 767.325(5), that the purpose of § 767.325 has not been frustrated,[13] and that a reversal of the orders of the circuit court is not required. *See State v. Coble,* 100 Wis. 2d 179, 215, 301 N.W.2d 221 (1981).[14]

## V

¶ 35. We conclude that Wis. Stat. § 767.24(4)(a)2. requires the circuit court to maximize the amount of time within an overall placement schedule and take

---

[13] A principal concern of the modification statutes is to protect the best interest of the child. *See* generally Wis. Stat. §§ 767.11; 767.24; 767.325.

In addition, another important objective of the modification statutes is continuity in the child's placement. *See* Wis. Stat. § 767.325(1)(b)2. Here, the custody modification was ordered in July 2003. Reversal of the court's custody order from nearly three years ago does not further the goal of maintaining continuity in the Landwehr children's placement, which the legislature has determined is in the children's best interest.

[14] We also note that this issue was not raised, briefed, nor argued by either party.

into consideration the best interest of the child, the presumption of the status quo under Wis. Stat. § 767.325(1) and (2), the general factors listed in § 767.24, and the particular factors listed under § 767.24(5)(am), when relevant to the child. We further conclude that the trial court properly exercised its discretion in retaining the existing school year placement and increasing Michael's summer placement. We therefore affirm the court of appeals.

*By the Court.*— The decision of the court of appeals is affirmed.

¶ 36. SHIRLEY S. ABRAHAMSON, C.J. (*concurring*). I write to explain how I read the statutes applicable to the present case.

¶ 37. First, I discuss how a circuit court proceeds under a request to modify an order of physical placement, including the meaning of the word "maximizes."

¶ 38. Second, I discuss the statutory requirement that a circuit court state its reasons in writing for modification of physical placement.

I

¶ 39. The circuit court faced with a request to modify an order of physical placement more than two years after the initial order was entered under Wis. Stat. § 767.24 should approach the request as follows:[1]

¶ 40. The circuit court must determine whether to substantially alter the time a parent may spend with his or her child. Before making any modification that would alter the time a parent may spend with his or her child, the circuit court must find:

---

[1] Wis. Stat. § 767.325(1)(b).

73

(1) The modification is in the best interest of the child,[2] and

(2) A substantial change of circumstance since the last order substantially affecting physical placement.[3]

¶ 41. In determining the best interest of the child under (1) above, the circuit court considers the rebuttable presumption that continuing the child's physical placement with the parent with whom the child resides for the greater period of time is in the best interest of the child.[4]

¶ 42. After considering the presumption, making the necessary findings, and deciding to modify the physical placement, the circuit court then must decide what the physical placement should be. In deciding the modified physical placement, the circuit court "shall consider the factors under s. 767.24(5)(am), subject to s. 767.24(5)(bm),[5] and shall make its determination in a manner consistent with s. 767.24."[6]

---

[2] Wis. Stat. § 767.325(1)(b)1.a.

[3] Wis. Stat. § 767.325(1)(b)1.b. Because the initial court order did not provide substantially equal periods of physical placement for the parties, Wis. Stat. § 767.325(2) does not come into play in the present case.

[4] Wis. Stat. § 767.325(1)(b)2.b.

[5] Wisconsin Stat. § 767.24(5)(bm) refers to an abusive parent. It has no application in the present case.

[6] Wisconsin Stat. § 767.325 provides as follows:

Except for matters under s. 767.327 or 767.329, the following provisions are applicable to modifications of legal custody and physical placement orders:

. . . .

(5m) Factors to consider. . . . [I]n all actions to modify legal custody or physical placement orders, the court shall consider the

¶ 43. Wisconsin Stat. § 767.24(5)(am) provides that the circuit court "shall consider all facts relevant to the best interest of the child" and lists 17 factors the circuit court shall consider in making its determination about periods of physical placement.

¶ 44. The circuit court shall make its determination about how to modify the physical placement "in a manner consistent with s. 767.24." This reference to "a manner consistent with s. 767.24" is unclear.[7] The majority opinion reasonably concludes that the reference in § 767.325(5m) to § 767.24 includes § 767.24(4) (as well as any other provision in § 767.24(4) applicable to physical placement), which governs physical placement when a circuit court orders sole or joint legal custody in the initial order.

¶ 45. Under Wis. Stat. § 767.24(4), in modifying physical placement the circuit court "shall consider each case on the basis of the factors in sub.(5)(am) . . . [and] shall set a placement schedule that allows the child to have regularly occurring, meaningful periods of physical placement with each parent and that *maxi-*

factors under s. 767.24(5)(am), subject to s. 767.24(5)(bm), and shall make its determination in a manner consistent with s. 767.24.

[7] *See Abbas v. Palmersheim,* 2004 WI App 126, ¶ 20, 275 Wis. 2d 311, 685 N.W.2d 546.

Does the reference in Wis. Stat. § 767.325(5m) to § 767.24 refer to everything in § 767.24 relating to physical placement, or is the reference only to the provisions of § 767.24 relating to the manner in which the circuit court makes its decisions, as set forth in § 767.24(6)? If the reference is to § 767.24(4), why did the legislature use the word "manner" and why did the legislature not explicitly refer to § 767.24(4), as it explicitly referred to § 767.24(5)(am) and (bm)? It seems reasonable, however, that a circuit court modifying a physical placement order consider the factors set forth in § 767.24(4).

*mizes the amount of time the child may spend with each parent,* taking into account geographic separation and accommodations for different households."[8] The question then arises about the meaning of the word "maximizes."[9]

¶ 46. To harmonize the statutes, I conclude that in complying with Wis. Stat. § 767.24(5m) by considering the best interest of the child and the 17 factors, the circuit court shall also "maximize[] the amount of time the child may spend with each parent" by setting a placement schedule that considers the *actual* amount of time the child is likely to spend with the parent. In other words, the circuit court in setting a placement schedule should, in addition to considering all the other factors required by statute, take into account the actual amount of time the child is likely to spend with each parent. Thus the circuit court might consider such matters as the time the child is, for example, in school, or with a caretaker, or asleep, and the times a parent works or is otherwise unavailable to be with the child.

¶ 47. I conclude that the approach I have set forth satisfies the statutory requirements and gives meaning to all parts of the statutes.

II

¶ 48. I also write to discuss part IV of the majority opinion, majority op., ¶¶ 33–34, relating to the requirement in Wis. Stat. § 767.325(5) that when either party

[8] Wis. Stat. § 767.24(4)(a)2. (emphasis added).

[9] Several court of appeals decisions have concluded that the statutes do not require equal placement. *See, e.g., Keller v. Keller,* 2002 WI App 161, ¶¶ 2, 10, 12, 256 Wis. 2d 401, 647 N.W.2d 426; *Arnold v. Arnold,* 2004 WI App 62, ¶ 2, 270 Wis. 2d 705, 679 N.W.2d 296.

opposes modification of physical placement, the court shall state in writing its reason for the modification. In the instant case, one of the parents opposed the modification to the physical placement and the circuit court modified physical placement.

¶ 49. Wisconsin Stat. § 767.325(5) states in full:

(5) Reasons for modification. If either party opposes modification or termination of a legal custody or physical placement order under this section the court shall state, in writing, its reasons for the modification or termination.

¶ 50. The writing requirement in Wis. Stat. § 767.325(5) may serve several purposes. First and most importantly, the written statement assists the party objecting to modification to understand better the reasons for the circuit court's modification of placement. A circuit court's written statement of reasoning is particularly important in family law cases because of the high percentage of self-represented litigants.[10]

¶ 51. In addition, a written statement of reasons for modification forces the circuit court to think through and express its rationale carefully; allows for easier appellate review to determine whether the circuit court erroneously exercised its discretion; and will later assist a circuit court that may be asked for further modification of physical placement.

---

[10] *See* The Wisconsin Pro Se Working Group, *Meeting The Challenge of Self-Represented Litigants in Wisconsin* 8 (Dec. 2000) (available at http://www.wicourts.gov/about/pubs/supreme/docs/prosereport.pdf) (reporting that in 1999, 53% of the family case litigants in judicial administrative district 10 were not represented by counsel and that 72% of the family case litigants in judicial administrative district 1 (Milwaukee County) were not represented by counsel).

¶ 52. That the legislature wanted a circuit court to write its reasoning is evidenced by yet another requirement applicable to the present case, namely, that a circuit court, in physical placement disputes, state its findings relating to the best interest of the child. Wisconsin Stat. § 767.24(6) states as follows in pertinent part: "If . . . physical placement is contested, the court shall state in writing why its findings relating to . . . physical placement are in the best interest of the child."

¶ 53. The circuit court in the instant case did not state in writing the reasons for the modification or why its findings are in the best interest of the child. The majority opinion concludes that "the circuit court order substantially met the requirement" that the order be in writing, reasoning that the written order incorporated by reference the findings of fact and conclusions of law stated orally on the record.[11]

¶ 54. I do not think that the writing requirements of Wis. Stat. § 767.24(6) and § 767.325(5) were met in the instant case. Nor were the requirements "substantially met." The legislature has not stated that the circuit court shall incorporate by reference an oral record of its reasons.[12]

---

[11] Majority op., ¶ 34.

[12] The majority cites *State v. Coble,* 100 Wis. 2d 179, 215, 301 N.W.2d 221 (1981), for the proposition that substantial compliance by the circuit court is sufficient. *Coble* is not applicable to the instant case. In *Coble,* Milwaukee County jury commissioners improperly allowed jurors to be dismissed from the jury pool based on the jurors' requests. This court held that the Milwaukee County Circuit Court was in substantial compliance with the jury selection statute and did not frustrate its purpose because, regardless of this error, it provided for an essentially random jury pool. In *Coble,* the legislative purpose,

¶ 55. In the instant case neither party claimed that the order did not meet the statutory writing requirements.

¶ 56. Were this court or the court of appeals considering a challenge to a circuit court's order modifying placement based on the lack of the writings required by Wis. Stat. § 767.24(6) and § 767.325(5), the reviewing court should, in my opinion, remand the case to the circuit court to state its reasoning in writing before determining whether the circuit court erroneously exercised its discretion.

¶ 57. For the reasons set forth I write separately.

¶ 58. ANN WALSH BRADLEY, J. (*concurring*). I write separately with regard to the writing requirement of Wis. Stat. § 767.325(5). The majority acknowledges that this issue was not raised, briefed, or argued. Majority op., ¶ 34 n.14.

¶ 59. Without the assistance of adversarial briefing or arguments, both the majority and the above concurrence divine purposes behind the writing requirement. *See id.*, ¶ 34 & n.13; concurrence, ¶ 50. They do not agree on those purposes. I would leave for another day our interpretation of the writing requirement in § 767.325(5).

---

namely random jury selection, was met. In the instant case, the legislative purposes for requiring written reasons have not been fulfilled.